UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | |
|---|---|
| **KENNETH GREGORY,** | § |
| Plaintiff, | § |
| | § Case No. 15-998 |
| vs. | § |
| **GENPACT SERVICES, LLC,** | § JURY TRIAL DEMANDED |
| **PRASAD VEERAPANENI,** | § |
| and **JOHN DOES 1-10**, | § |
| Defendants. | |

**PLAINTIFF KENNETH GREGORY'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, complaining of Defendants, alleges and says:

1. Plaintiff Kenneth Gregory ("**Plaintiff**" or "**Gregory**") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("**TCPA**"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims*, 132 S. Ct. at 744. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them. Thus, and as applicable here, Section 227(b)(1)(A)(iii) of

the TCPA specifically prohibits the making of "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service[.]"

3.  The TCPA prohibits calls to a cellular telephone made with an autodialer or with a prerecorded voice unless prior express consent is given.  Plaintiff never so consented.

4.  Genpact Services, LLC ("**Genpact**") called Plaintiff's cellular telephone on numerous occasions using an autodialer and a pre-recorded voice, and continued to make such telephone calls even after Plaintiff spoke directly to Genpact's representative to advise them that he did not owe the debt in question and to instruct Genpact to cease making the calls to him.

5.  Because Plaintiff had not given his consent to receive calls from Genpact, Defendants' calls violated the TCPA.

6.  Plaintiff's cellular telephone number was also listed on the national Do Not Call Registry, a list explicitly designed to protect the public from these kind of intrusive calls.  Because Defendants made at least two of these calls to Plaintiff when Plaintiff was on the Do Not Call Registry, Defendants violated the Do Not Call Registry laws and regulations.

7. This is the exact scenario Congress attempted to prevent in enacting the TCPA. Plaintiff now seeks this Court's intervention and help in seeking redress for this unlawful conduct.

**Parties**

8. Plaintiff Kenneth Gregory is a resident of the State of North Carolina and this District.

9. Plaintiff is the "called party" with respect to the calls placed to his cellular telephone number 910-703-4483.

10. Defendant Genpact, upon information and belief, is a limited liability company organized under the laws of the State of Delaware.

11. Defendant Genpact regularly conducts business in North Carolina.

12. Genpact, upon information and belief, maintains its primary business location at 42 Old Ridgebury Road, 1st Floor, Danbury, Connecticut, and maintains an office at 212 South Tryon Street, Suite 1000, Charlotte, North Carolina.

13. Defendant Genpact is, among other things, a debt collection agency. *Accord* "Declaration of Prasad Veerapaneni in Support of Motion for Summary Judgment by Genpact Services, LLC" in *Manfred Neu v. Genpact Services, LLC*, 11-CV-2246-W-KSC (S.D. Cal.) [Docket No. 20-2 (Oct. 4, 2012)] (hereinafter, the "**Veerapaneni Declaration**") ¶ 2 ("Genpact is a debt collector").

14. Defendant Prasad Veerapaneni, upon information and belief, is a citizen and resident of Marietta, Georgia.

15. Upon information and belief, at all times relevant hereto, Defendant Veerapaneni, acting in concert with John Doe Defendants, has formulated, directed, controlled, had the authority to control, or otherwise participated in the acts and practices set forth in this Complaint.

16. In the Veerapaneni Declaration, Defendant Veerapaneni declared that he is "Vice President of Compliance" for Genpact, and that his duties for Genpact "require a working knowledge of Genpact's business operations and one of [his] primary responsibilities in that position involves maintaining Genpact's policies and procedures to insure compliance with state and federal regulatory laws." (Veerapaneni Declaration ¶ 1).

17. Until about 2010, Defendant Veerapaneni executed Defendant Genpact's annual filings with the North Carolina Secretary of State as its managing member. Beginning in about 2011, Defendant Veerapaneni executed the filings as managing member of "Genpact Global Holdings (Bermuda) Limited," an entity identified as managing member of Defendant Genpact.

18. Defendants John Does 1-10 will be identified through discovery, but are not presently known.

19. Upon information and belief, Defendant Veerapaneni, along with certain John Doe Defendants, controlled and used the autodialing equipment at issue and "developed or authorized the policies and procedures that led to [Defendant Genpact's] violations of the TCPA." *McGee v. Halsted Fin. Servs., LLC*, 2014 U.S. Dist.

LEXIS 36159 at *2 (D. Del. Mar. 19, 2014) (citing *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 378 (4th Cir. 2013)).

## Jurisdiction & Venue

20. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012). It also has jurisdiction pursuant to 15 U.S.C. § 1692k(d) and/or pursuant to 28 U.S.C. § 1367 for pendent state law claims.

21. Venue is proper because the Plaintiff is a resident of this District and the conduct at issue took place in this District and the County of Hoke.

## The Telephone Consumer Protection Act

22. Advances in telecommunications technology have provided benefits to American society. But those benefits are not cost-free; new technologies bring with them new ways to intrude upon individual privacy and waste the time and money of consumers. The 1980s and 1990s brought an explosion of abuses of telephone and facsimile technology, including the use of auto-dialers to clog telephone lines with unwanted calls, "robocalls" with unsolicited or unwanted, prerecorded messages, and "junk faxes" that consume the recipients' paper and ink and interfere with the transmission of legitimate messages.

23. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" 47 U.S.C. § 227.

24. Through the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("robocalls"), finding:

> [R]esidential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.
>
> . . . .
>
> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call[,] . . . is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* § 2(10) and (12); S*ee also Mims*, 132 S. Ct. at 745.

25. The TCPA regulates, among other things, the use of automated telephone equipment, or "auto-dialers." Specifically, the plain language of section 227(b)(1)(A)(iii) of the TCPA prohibits the use of auto-dialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

26. According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

27. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("FCC Declaratory Ruling"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

28. The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." *See FCC Declaratory Ruling,* 23 F.C.C.R. at 564-65.

29. In the same Declaratory Ruling, the FCC emphasized that both the creditors and third party debt collector may be held liable under the TCPA for debt collection calls. ("A creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules. Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call... A third party collector may also be liable for a violation of the Commission's rules.") *See also Maryland v. Universal Elections*, 729 F.3d 370, 378-379 (4th Cir. 2013) ("[T]he language of the [TCPA] indicates that it is intended to apply to the individuals who use the autodialing systems that place calls, and not just to the autodialing services themselves").

Plaintiff's Original Complaint
Page | 7

30. On July 10, 2015 the FCC confirmed it previous rulings that an autodialer included equipment that generally has the capacity to store or produce, and dial random or sequential numbers (and thus meets the TCPA's definition of "autodialer") even if it is not presently used for that purpose, including when the caller is calling a set list of consumers. The FCC also reiterated that predictive dialers, as previously described by the Commission, satisfy the TCPA's definition of "autodialer" for the same reason. FCC 15-72.

**Factual Allegations**

31. In fall of 2013, on information and belief, Genpact began collection efforts on a debt allegedly owed by someone other than Plaintiff and began a process of harassing phone calls to Plaintiff. The calls were made to Plaintiff in Hoke County, North Carolina.

32. During the period beginning in approximately October of 2013 and ending in approximately at the end of January 2014 Genpact called Plaintiff on a repeated basis. Genpact's calls were made to Plaintiff's cell number. On information and belief the purpose for these calls was debt collection.

33. Calls were made by Defendant Genpact to Plaintiff at cellular number 910-703-4483 (the "**Cell Phone Number**"). Plaintiff did not at any time provide any Defendant with permission to call his Cell Phone Number.

34. Defendant Genpact made multiple calls to Plaintiff's cell phone. On many days Genpact called the Cell Phone Number on more than one occasion.

Plaintiff's Original Complaint
Page | 8

35. On at least one occasion including in about early December 2013, Plaintiff answered a call from Defendant Genpact or returned a call from Genpact and told the Genpact representative that:

    a. the representative was calling the wrong number; and

    b. advised Genpact to stop calling him on his cell phone.

36. Notwithstanding Plaintiff's explicit communication to Defendant Genpact that he did not owe the debt in question and express instruction to cease all calls to Plaintiff, Defendant Genpact's calls to the Cell Phone Number continued.

37. Plaintiff is the subscriber on the account for the Cell Phone Number and is charged for calls made to the Cell Phone Number via a monthly charge.

38. At all material times Plaintiff was/is the subscriber to the cell phone service associated with the Cell Phone Number and the cellular service provider for the Cell Phone Number was Verizon.

39. Defendant Genpact placed automated calls to Plaintiff's cell phone using an automatic telephone dialing system ("**ATDS**") "which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C. § 227(a)(1)."

40. The auto dialed nature of the calls was evident because, when the calls were answered, they would either begin with an artificial or prerecorded voice or several seconds would elapse before a live person would speak. When the calls connected, there was an audible click from the receiver. After a significant pause, a

message was sometimes left by Genpact either by a live person or a prerecorded voice. As such, the calls at issue were made using an automatic telephone dialing system, equipment having the capacity to dial Plaintiff's number without human intervention.

41. The facts in the preceding paragraph indicate the call was placed through an "automatic telephone dialing system" as defined in 47 U.S.C. § 227(a)(1).

42. On many of the calls Defendant Genpact left a message consisting of a prerecorded voice. Plaintiff listened to the message and recognized that it was not a live person leaving the message but an automated voice recording.

43. The facts in the preceding paragraph indicate the call was placed using an "artificial or prerecorded voice."

44. Plaintiff has not provided any Defendant with the Cell Phone Number or given Genpact permission to call his Cell Phone Number. Thus, Genpact did not have "prior express consent of the called party" to call the Cell Phone Number.

45. None of the calls at issue were placed by Genpact to Plaintiff's Cell Phone Number for "emergency purposes" as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

46. Beginning with the date four years before the filing of this Complaint, Genpact placed numerous phone calls to Plaintiff's cellular telephone number using an autodialer or with a prerecorded voice in an effort to collect an alleged debt and the calls continued through at least the end of January 2014.

47. On information and belief Genpact made over 85 calls to the Cell Phone Number in a three- to four-month time period.

**Legal Claims**

**Count One:**

**Violation of the TCPA's Provisions Prohibiting
Auto-Dialed and Prerecorded Message Calls to Cell Phones**

48. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

49. Genpact repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone number using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of the federal law, including 47 U.S.C. § 227(b)(1)(A)(iii). Thus, Genpact violated the TCPA by initiating a telephone call using an automated dialing system or prerecorded voice to Plaintiff's telephone number assigned to a cellular telephone service.

50. Defendant Veerapaneni and each of the John Doe Defendants, upon information and belief, developed or authorized the policies and procedures that led to violations of the TCPA.

51. Plaintiff is informed, believes, and alleges that Genpact's violations of the TCPA described above were done willfully and knowingly.

52. The willful and knowing nature of Genpact's conduct is exhibited in part by the following facts:

a. Genpact is a large entity with access to legal advice through its own regulatory department and outside employment counsel, and there is no contemporaneous evidence that it determined that its conduct was lawful;

b. Genpact previously has been sued over violations of the TCPA. *See*, *e.g.*, *Forrest v. Genpact Servs., LLC*, 962 F. Supp. 2d 734 (M.D. Pa. 2013);

c. Genpact Limited, a Bermuda entity, has acknowledged in documents including a 2014 Form 10-K filed with the United States Securities and Exchange Commission, "We are also subject to laws and regulations on direct marketing, such as . . . the Telephone Consumer Protection Act and rules promulgated by the Federal Communications Commission . . ." http://www.sec.gov/Archives/edgar/data/1398659/000119312515068826/d833545d10k.htm p.14. This 10-K document specifies that the term "we" refers to both Genpact Limited and its subsidiaries. *Id.* at p.1.

d. Genpact knew or had reason to know that its conduct was inconsistent with published FCC guidance interpreting the TCPA and the plain language of the statute;

e. Genpact knew that Plaintiff had not consented to calls to his cell phone, *inter alia*, because Plaintiff told Genpact the number Genpact was calling was the wrong number and advised Genpact to quit calling him at that number;

f. Upon information and belief Genpact knew that permission was required before Genpact could call Plaintiff's cell phone using an auto-dialer or a prerecorded voice; and

g. Upon information and belief Genpact was aware of the requirements of the TCPA, but choose to not to comply with those requirements.

53. Plaintiff is entitled to damages of $1,500 per violation pursuant to 47 U.S.C. § 227(b)(3) because the violations were willful and knowing violations of the TCPA. If the violations were not willful and knowing violations of the TCPA, Plaintiff is entitled to statutory damages of $500 per call.

## Demand for Preservation

54. Plaintiff demands that Defendants retain and preserve all records related to the allegations in this Complaint. Specifically, Plaintiff's demand for preservation includes, but is not limited to, the following documents and information:

a. All applications for all accounts which were the subject of any collection calls made by or on behalf of any Defendant to the Cell Phone Number from October 26, 2011 to the present;

b. All documents evidencing the terms and conditions of all accounts which were the subject of any collection calls made by or on behalf of any Defendant to the Cell Phone Number from October 26, 2011 to the present;

c. All documents (including recordings and electronic documents) evidencing any and all communications between any Defendant and/or any persons acting on its behalf and Plaintiff from October 26, 2011 to the present;

d. List of all phone numbers, including spoofed numbers, used by any Defendant and/or persons acting on its behalf in making calls to the Cell Phone Number from October 26, 2011 to the present;

e. All recordings, transcripts and/or summaries of all calls made by or on behalf of any Defendant to the Cell Phone Number from October 26, 2011 to the present;

f. All written, recorded, electronic or other documentation or evidence which any Defendant contends shows that it obtained the prior express consent of Plaintiff to call the Cell Phone Number using an autodialer and/or using an artificial or prerecorded voice;

g. All written, recorded, electronic or other documentation or evidence of any and all requests by Plaintiff that calls made by or on behalf of Defendant Genpact to the Cell Phone Numbers stop;

h. All documents including but not limited to invoices, transmission logs, or summary logs, provided to any Defendant by any person or entity retained by any Defendant to make calls to cell phones using an autodialer and/or an artificial or prerecorded voice from October 26, 2011 to the present, to the extent such documents pertain to calls made to the Cell Phone Number;

i. All written, recorded, electronic or other documentation or evidence which provide all or any part of the following information:

(i) the dates, times and duration of all calls made by or on behalf of any Defendant to the Cell Phone Number using an autodialer and/or an artificial or prerecorded voice;
(ii) the number from which each call was made;
(iii) the number to which each call was made;
(iv) the identity of the intended recipient and actual recipient of each call; and/or
(v) the identity of the subscriber of each number called.

j. All documents evidencing the name, make, model, serial number, version, and capabilities of all equipment, hardware, and/or software used to make any calls by or on behalf of any Defendant to the Cell Phone Number and all documents evidencing which calls were made using which equipment, hardware and/or software;

k. All written, recorded, electronic or other documentation or evidence of all policies or procedures implemented by any Defendant with regard to the making of calls to cell phone numbers using an automatic telephone dialing system and/or an artificial or prerecorded voice;

l. All written, recorded, electronic or other documentation or evidence concerning any Defendant's knowledge of the TCPA and the regulations and rulings of the FCC thereunder; and

m. All written, recorded, electronic or other documentation or evidence concerning any lawsuits and/or settlements and/or settlement discussions to which any Defendant was a party and/or any demands upon any Defendant which, in whole or in part, pertain to the TCPA within the last five years.

55. Demand is made on each Defendant to notify any third parties or vendors retained by Defendants or any of them to make autodialer or artificial or prerecorded voice calls to the Cell Phone Number and request production of any documents included within this demand.

**Relief Sought**

Plaintiff requests the following relief from Defendants, jointly and severally:

a. That Defendants be found liable under the TCPA and Plaintiff be awarded statutory damages of $500 for each negligent violation of the TCPA, and $1,500 for each willful/knowing violation of the TCPA, an amount in excess of $25,000.00;

b. Pre-judgment interest from the date of filing this suit;

c. All costs of this proceeding; and

d. All other relief as is just and equitable under the circumstances to which Plaintiff is entitled by law.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Date: November 25, 2015　　　　Respectfully submitted,

        **/s/ John F. Bloss**
        John F. Bloss
        North Carolina Bar Number: 23947
HIGGINS BENJAMIN, PLLC
101 W. Friendly Avenue, Suite 500
Greensboro, North Carolina 27401
376-243-1600 (office)
376-274-4650 (fax)
JBloss@greensborolaw.com

        Chris R. Miltenberger
        Texas Bar Number: 14171200
The Law Office of Chris R. Miltenberger, PLLC
1340 N. White Chapel, Suite 100
Southlake, Texas 76092-4322
817-416-5060 (office)
817-416-5062 (fax)
chris@crmlawpractice.com

***Attorneys for Plaintiff***